**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

STEVEN MADDEN, LTD.,              :

                            :

            Plaintiff,        :        **COMPLAINT FOR**

                            :   **DECLARATORY JUDGMENT**

     vs.                   :

                            :

YVES SAINT LAURENT and LUXURY GOODS  :

INTERNATIONAL (LGI) S.A.,         :

                            :

           Defendants.     :

---------------------------------------------------------------- x

     Plaintiff Steven Madden, Ltd. ("Madden" or "Plaintiff"), by and through its counsel Amster, Rothstein & Ebenstein, LLP, for its Complaint against Defendants Yves Saint Laurent ("YSL") and Luxury Goods International (LGI) S.A., (collectively, "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

     1.     This is a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et. seq.*, the Patent Act, 35 U.S.C. §§ 1, *et seq.*, the Trademark Act, 15 U.S.C. §§ 1051 *et seq.*, and for substantial and related claims of tortious interference with contract, intentional interference with prospective economic advantage, deceptive and unfair trade practices, breach of contract, promissory estoppel, and equitable estoppel, under the statutory and common laws of the State of New York.

     2.     As discussed herein, this action arises out of a substantial, immediate and real controversy between the parties based on threats that Defendants have made against Madden and its customers regarding Defendants' alleged patent, trademark and state common law rights relative to certain Madden footwear.

3.      In a bad faith attempt to stifle legitimate competition in the footwear industry, Defendants have threatened to sue Madden and its customers for infringement of U.S. Design Patent No. D607,187 ("the '187 Patent") directed toward a specific high-heeled platform shoe, as well as alleged trade dress rights in Defendants' shoes.  A true and correct copy of the '187 Patent is attached hereto as Exhibit A.  Defendants' threats have already caused significant harm to Madden, causing certain Madden customers to cease selling Madden products.  This declaratory judgment action is required because Defendants' assertions are baseless, and Defendants' reckless assertion of their intellectual property rights against Madden and its customers must be immediately stopped.

4.      Defendants have alleged that Madden's and its customer's sale of its "Sicily" *flat sandal* infringes the '187 Patent, which is directed to a ***high-heeled platform*** sandal.  This allegation is absurd and frivolous, as no ordinary observer could ever mistake the Sicily flat sandal for the high-heeled platform design of the '187 Patent:

| U.S. D607,187 | Madden Sicily |
|---|---|



5.      As is readily apparent, unlike the shoe claimed in the design patent, the Sicily sandal is a flat sandal and lacks, *inter alia*, high heels, a platform sole, ankle straps, and buckles.

6.      Notwithstanding these differences, Defendants have sent cease and desist letters to Madden and at least 13 of Madden's customers who sell the flat Sicily sandal, threatening to sue for infringement of the '187 Patent.  This has caused some Madden customers to pull the Sicily sandal from their shelves and return the sandals to Madden.  As such, Madden seeks a declaration that the flat Sicily sandal does not infringe this clearly inapplicable patent.

7.      Defendants also assert infringement of purported trade dress rights in the flat version of their "Tribute" sandal (the "Alleged Flat Tribute trade dress").  Defendants have no federal trade dress registration, nor can they establish that they have any trade dress rights in their Tribute flat sandal ("the Tribute Flat Sandal").  Defendants claim trade dress rights in the flat sandal sole, a clearly functional element present in all flat sandals, as well as the straps that cover the toe bed (the "toe bed straps").  But these design features are functional and Defendants have not shown, and cannot show, that the toe bed straps are inherently distinctive.  Additionally, there can be no likelihood of confusion between Defendants' Alleged Flat Tribute trade dress and Madden's Sicily sandals given, *inter alia*, (1) the clear dissimilarities between the shapes and contours of the toe bed straps used in Madden's Sicily sandal and Defendants' Tribute Flat Sandal, and (2) the markedly different marketplace conditions under which Madden's and Defendants' shoes are sold, e.g., Madden's Sicily sandal is targeted at a much lower price point consumer than the luxury market that Defendants target with their very expensive Tribute Flat Sandal.

8.      As such, Madden seeks declarations that Defendants lack any protectable trade dress rights in their flat sandal and that Madden's Sicily sandal is not confusingly similar to, and does not infringe, any of Defendants' purported trade dress rights.

-3-

9.     If this were not enough, Defendants are also accusing Madden's long-discontinued high-heeled Kananda platform shoe of infringing the '187 Patent and Defendants' trade dress rights.  This assertion is a blatant breach of the parties' prior agreement in 2017, in which, Defendants promised that they would not assert these intellectual property rights against the Kananda shoe in exchange for Madden's promise, for business reasons, to discontinue the Kananda shoe design.

10.     Madden has kept its end of the bargain, as it has not sold the Kananda shoe since early 2017 when the parties settled their dispute.  Defendants, by contrast, have breached the agreement, and now threaten to sue Madden for infringement of the '187 Patent and their trade dress rights (in the high-heeled, platform Tribute sandal) with respect to the still discontinued Kananda shoe.

11.     After discontinuing the high-heeled, platform Kananda shoe, Madden designed the Sicily sandal, which has a completely different design from the Kananda shoe. As shown below, the Sicily sandal is a completely different flat sandal and lacks, *inter alia*, high heels, a platform sole, ankle straps, and buckles, which are all part of the Kananda shoe:

| Madden Kananda | Madden Sicily |
| --- | --- |



12.     Defendants' motives for breaching the agreement and asserting frivolous design patent and trade dress claims are readily apparent.  On information and belief, Defendants are unhappy with the existence of Madden's completely different Sicily sandal, and have resorted to the aforementioned desperate measures to thwart Madden's sales, namely by improperly attempting to equate the clearly different flat Sicily sandal with the high-heeled shoe claimed in the '187 Patent, the discontinued high-heeled platform Kananda shoe and their Tribute sandal.

13.     While Madden attempted to amicably resolve its differences with Defendants concerning the Sicily sandal, Defendants' intimidation of Madden's customers was the last straw.  Madden cannot stand idly by and allow Defendants to strong-arm its customers with baseless threats.

14.     Defendants' actions have all been done with bad faith, seeking to stifle legitimate competition in the footwear industry.  As such, and as set forth herein, Madden seeks a declaratory judgment against Defendants that the flat Sicily sandal does not infringe any of Defendants' intellectual property rights, including the '187 Patent and the Alleged Flat Tribute trade dress; and enjoining all of their improper acts with respect to the Sicily sandal, as well as the discontinued Kananda shoe, including the renewed assertion of the '187 Patent against the Kananda shoe.

**THE PARTIES**

15.     Plaintiff Madden is a business entity organized under the laws of the State of Delaware having a principal place of business at 52-16 Barnett Avenue, Long Island City, New York, 11104.

16. Upon information and belief, Defendant YSL is a corporation organized and existing under the laws of France, with a principal place of business at 7, Avenue George V, 75008 Paris, France.

17. Upon information and belief, YSL regularly does and/or transacts business within this judicial District, including at its two retail stores in this district, located at 3 East 57th Street, New York, New York, 10022, and at 80 Greene Street, New York, New York, 10012.

18. Upon information and belief, Defendant LGI is a corporation organized and existing under the laws of Switzerland, with a principal place of business at Via Industria 19 6814, Cadempino, Switzerland.

19. Upon information and belief, Defendant LGI regularly does and/or transacts business within this judicial District, through providing distribution and logistical support to Defendant Yves Saint Laurent at its two retail stores in this district, located at 3 East 57th Street, New York, New York, 10022, and at 80 Greene Street, New York, New York, 10012.

## JURISDICTION AND VENUE

20. This action arises under the Trademark and Patent Laws of the United States, 15 U.S.C. §§ 1051 *et seq*. and 35 U.S.C. §§ 1 *et seq*., and seeks a specific remedy based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201, 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

21. The Court has personal jurisdiction over all Defendants, because they each distribute, promote and/or sell women's footwear that is the subject of this action in retail stores

located within this District and via one or more interactive websites that are accessible and sell directly to consumers within this District.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Plaintiff resides in this judicial district and/or because a substantial part of the events or acts giving rise to Plaintiff's claims occurred in this judicial district.

23.     Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are not resident in the United States.

## FACTS

24.     Madden provides on-trend footwear, handbags and accessories to women and men.  Madden products are sold worldwide in over 80 countries.  Madden was founded in 1990 by its founder Steve Madden and prides itself as a company with vision that is on the cutting edge of trends.  This continued vision has led Madden to become a true lifestyle and destination brand for footwear, handbags and accessories.

**Defendants' Design Patent**

25.     Upon information and belief, Defendant YSL is the owner of the '187 Patent, filed on September 26, 2008 and issued on January 5, 2010.

26.     The '187 Patent claims protection over "the ornamental design for a shoe, as shown and described" in the '187 Patent.

684953.1

27.     The claim in the '187 Patent is limited to the precise figures drawn in the patent, as shown in solid black in the patent and replicated below:



28.     As shown in the above drawings, the '187 Patent is directed toward high-heeled platform shoes.

**The New Patent Dispute Over Madden's Flat Sicily Sandal**

29.     Madden began selling the flat Sicily sandal in the Spring of 2018:



-8-

30.     In contrast to the claimed design of the '187 Patent, the Sicily sandal does not have a platform sole, high heel, T-strap, ankle straps, or a buckle.

31.     On information and belief, Defendants took notice of the existence of the Sicily sandal in the marketplace.   Defendants then launched an illegitimate campaign to thwart Madden's sales of this product by threatening to sue Madden and at least 13 of its customers for infringement of the '187 Patent.

32.     Specifically, on July 27, 2018, counsel for Defendants sent a notice letter (the "Notice Letter") to Madden, claiming that the flat Sicily sandal infringes the '187 Patent (as well as Defendants' trade dress rights, as discussed below).   A true and correct copy of the Notice Letter is attached as Exhibit B.

33.     The Notice Letter attached a draft Complaint which counsel threatened to file if Madden does not, *inter alia*, immediately cease its sales of the Sicily sandal.   A true and correct copy of the draft Complaint is attached to the Notice Letter in Exhibit B.

34.     The draft Complaint asserted design patent infringement of the Sicily sandal in view of the '187 Patent.

35.     Defendants' assertion of the '187 Patent against the Sicily sandal is frivolous and made in bad faith.   There is simply no way that an "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008).   Only a cursory look reveals the significant differences between the high-heeled platform shoe design of the '187 Patent and the flat sandal design of Madden's Sicily sandal:

684953.1



| U.S. D607,187 | Madden Sicily |
| --- | --- |
| Fig. 2 | |

36.     After receiving the Notice Letter, Madden engaged in good faith discussions in an attempt to settle this dispute with Defendants, but the parties have not resolved their differences. Madden subsequently learned that Defendants' counsel had also written notice letters to at least 13 Madden customers, threatening to sue them for infringing the '187 Patent if they do not immediately cease their sales of the Sicily sandal.  Specifically, upon information and belief, Defendants sent notice letters to at least the following Madden customers who sell the Sicily shoes: Dillard's, DNA Footwear, DSW, Express, Jet, Shoes.com, Walmart, Lori's Shoes, HG Boutique, Shoebacca, Von Maur, and Zappos.  A true and correct copy of one of these thirteen letters is attached as Exhibit C.

37.     Defendants' threats against Madden's customers have caused damage to Madden. For example, some customers have ceased their sales of the Sicily sandal and have asked Madden to take back their unsold inventory, presumably out of fear of being sued by Defendants.

38.     Madden cannot tolerate Defendants' intimidation of Madden's customers, nor will Madden allow Defendants to unfairly inhibit its success in the marketplace.  Defendants' baseless patent assertions have disrupted Madden's sales of its Sicily sandal and its relationship with its customers, necessitating the filing of this lawsuit.

684953.1

**Defendants Also Asserted Trade Dress Infringement Against the Sicily Sandal**

39.     Seemingly recognizing that their assertion of the '187 Patent against the flat Sicily sandal would not withstand legal scrutiny, Defendants have also trumped up a baseless trade dress infringement claim against Madden's Sicily sandal.  While Defendants' letters to Madden's customers focused on the design patent, the letters did not include any specific allegations regarding trade dress infringement.

40.     The draft Complaint asserts that the Sicily sandal infringes the Alleged Flat Tribute trade dress.  The draft Complaint sent to Madden, however, did not come close to defining a legally protectable trade dress.

41.     The Tribute Flat Sandal has a toe bed strap design which includes an elliptical central element (traced in red).  The toe bed straps (traced in blue) are elliptical as well, with no straight edges.  The circular foot straps are held closely together by the circular central element (red) and an additional strap crossing the toe bed.



42.     Paragraph 31 of the draft Complaint defines the Alleged Flat Tribute trade dress as follows:

684953.1

The TRIBUTE Flats trade dress is comprised of a substantially flat sole containing a toe strap that contains the following elements, namely:

• two U shaped pieces each attached to one side of the shoe so that the rounded end is facing in towards the middle of the toe bed;
• a strap that bisects the U shaped straps and crosses the toe bed; and
• a circular strap element, either emanating from a t-strap or as a standalone element, with the U-shaped pieces and the bisecting strap woven together with the bisecting middle strap going under the circular strap element and then over the ends of the two U-shaped pieces in the center of the circular strap element to create an intricate pattern over the toe bed. (Hereinafter the "TRIBUTE Flats Trade Dress").

43.     The draft Complaint does not define a legally protectable trade dress because, for example, it failed to allege specific facts as to why the Alleged Flat Tribute trade dress is non-functional, how the alleged trade dress has acquired distinctiveness through secondary meaning and how there could be likelihood of confusion between the alleged trade dress and the design of the Sicily sandal.  A complaint lacking these elements would fail to survive a motion to dismiss. *See, e.g.*, *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-1272, 2018 U.S. Dist. LEXIS 28726, at *6-10 (E.D.N.Y. Feb. 22, 2018) (granting motion to dismiss where the complaint failed to plead "specific facts" to support an argument of non-functionality; and contained no written description as to how there could be a likelihood of confusion).

44.     With respect to functionality, for example, the straps in the toe bed that comprise the Alleged Flat Tribute trade dress serve a critical function, namely holding the foot in place when the Tribute sandal is worn.

45.     With respect to secondary meaning, as a product configuration, Defendants' Alleged Flat Tribute trade dress cannot be inherently distinctive and Defendants have the burden to show that their trade dress has acquired distinctiveness through secondary meaning—that in the minds of the public, the primary significance of the trade dress is to identify the source of the

-12-

product rather than the product itself.  For example, Paragraph 37 of the draft Complaint includes statements that "the TRIBUTE Sandals are among the world's most famous and widely recognized" and that "[c]onsumers, potential consumers and other members of the public and fashion industry recognize that products bearing the TRIBUTE Heels Trade Dress and the TRIBUTE Flats Trade Dress originate exclusively with Plaintiffs."  (Draft Compl. ¶ 37.)  These statements are no more than *ipse dixit* and fail to meet Defendants' burden to establish inherent distinctiveness.

46.    With respect to likelihood of confusion, the draft Complaint fails to allege specific facts as to how there could be likelihood of confusion between the Alleged Flat Tribute trade dress and Madden's Sicily sandal.  And, Madden is unaware of any such facts.

47.    A comparison of the Tribute Flat Sandal to the Sicily sandal illustrates why there would be no likelihood of confusion.  The Sicily sandal has a toe bed design with an angled design, as opposed to the rounded design of the Tribute Flat Sandal:



48.    In contrast to the Tribute Flat Sandal which has rounded edges and an elliptical central element, the toe bed straps of the Sicily sandal consist of interwoven straps that have straight, squared off edges.  For example, the toe bed straps include a distinctive square-shaped

central element (outlined with red dashes). The toe bed straps have substantially parallel, straight edges (partially traced in blue) that extend in the longitudinal direction along the center of the toe bed, as well as straight edges (traced in green) that are angled away from the parallel edges so as to extend towards the sides of the toe bed. The toe bed straps are held together by the square-shaped element (red) and an additional loop strap, leaving a substantial gap between the parallel edges (blue). As a result, the straps of the Sicily shoes have an overall appearance as being loosely woven together.

49.     In contrast to the Sicily shoe, there is no gap between the edges of the elliptical toe bed straps (blue). As a result, the straps of the Tribute sandal have an overall appearance of being tightly knit together.

50.     Like its assertion of the '187 Patent, Defendants' trade dress assertion is also without merit.

**The Prior Dispute Over Madden's High Heeled Kananda Shoe**

51.     This is not the first time the parties have had a dispute regarding intellectual property rights and footwear.

52.     In 2016, Madden was selling a high-heeled platform shoe, the Kananda shoe. The Kananda shoe is represented below:



53.     On June 17, 2016, Defendants sent a letter to Madden, alleging that Madden's Kananda shoe infringed the '187 Patent.

54.    On information and belief, Defendants manufacture and sell a high-heeled platform sandal, the "Tribute Sandal", which embodies the design of the '187 Patent:



55.    Defendants' letters to Madden also accused Madden's Kananda shoe of infringing trademark rights to this high-heeled Tribute Sandal.

56.    In letters sent over the course of 2016, Defendants demanded that Madden discontinue the Kananda shoe.

57.    Madden, pursuant to a business decision, agreed to discontinue the Kananda shoe and Defendants agreed to drop their assertions against the Kananda shoe.

58.    Thereafter, pursuant to the parties' agreement, Madden ceased selling the Kananda shoe, and Defendants dropped their assertions against the Kananda shoe.

**Defendants Have Threatened to Sue Madden Over the Kananda Shoe,
In Breach of the Parties' Prior Agreement**

59.    In the draft Complaint, Defendants have accused the discontinued Kananda shoe of infringing the '187 Patent and its alleged trade dress rights.

60.    Strangely, the draft Complaint includes a reference to their June 17, 2016 notice letter to Madden regarding the alleged infringement of the Kananda shoe (Draft Compl. ¶ 73), but Defendants completely ignore the agreement between the parties that resulted from

684953.1

discussions that followed.  This is because Defendants have no explanation for their breach of the parties' agreement for the Kananda shoe.

61.    Defendants' renewed assertion of the '187 Patent and their alleged trade dress rights against the Kananda shoe is a bad faith, blatant violation of the parties' prior agreement. Madden has not sold the Kananda shoe since early 2017, just as it promised Defendants.  This promise was made in exchange for Defendants' promise that they would not assert the '187 Patent and their trade dress rights against the Kananda shoe.

62.    Defendants are attempting to shoehorn the '187 Patent into the Sicily sandal since it does not have any patents that match the design of this flat sandal.  In this regard, Defendants are attempting to equate the *flat* Sicily shoe design with the ***high-heeled platform*** shoe design claimed in the '187 Patent.  Defendants are thus using this frivolous assertion as a springboard for threatening to sue Madden with respect to the Kananda shoe, despite Defendants' promises that they would never do so.

63.    The flat Sicily sandal and the high-heeled Kananda shoe are so different that Madden's subsequent sale of the Sicily sandal cannot by any reasonable measure constitute a breach of the parties' prior agreement and consequently, cannot justify Defendants' renewed allegations against the Kananda shoe.  Thus, as discussed in Count VII, Defendants are in blatant breach of the parties' prior settlement of their dispute over the Kananda shoe.

64.    Finally, the draft Complaint makes design patent and trade dress allegations against an "Infringing Sneaker."  However, to date, both Defendants and Madden have been unable to identify any sales of this sneaker in the United States.  Madden has requested additional information from Defendants' counsel to assist it in identifying this sandal, but to date,

Defendants have not provided this information.  As such, to the extent that there may be a dispute over the so-called "Infringing Sneaker", such dispute is not yet ripe for adjudication.

65.     Defendants' allegations of patent and trademark infringement against Madden and Madden's customers, which Madden denies, have created a substantial, immediate and real controversy between the parties as to the enforceability of Defendants' claimed intellectual property rights and non-infringement of the '187 Patent and Defendants' Alleged Flat Tribute trade dress.  A valid and justiciable case or controversy thus has arisen and exists between Madden and Defendants within the meaning of 28 U.S.C. § 2201.  A judicial determination is necessary to determine Defendants' patent and trade dress rights and the issue of non-infringement.  A judgment would serve a useful purpose in settling the legal issues, and a judgment would resolve the controversy and offer relief from uncertainty.

## COUNT I
### (Declaration That Madden Does Not Infringe the '187 Patent)

66.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 65, inclusive.

67.     To establish design patent infringement, Defendants have the burden to prove that "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008).

68.     As shown in the below side-by-side comparison, Madden's Sicily flat sandal design is so distinct from the high-heeled platform shoe design claimed in the '187 Patent such that no ordinary observer, even unaware of prior high-heeled platform shoe designs, could possibly be deceived into thinking that the Sicily flat sandal design was the same as the high-heeled platform shoe design in the '187 Patent:

| U.S. D607,187 | Madden Sicily |
|---|---|
|  | |

69.     In view of the foregoing, Madden seeks a declaratory judgment that the Madden Sicily sandal does not infringe the '187 Patent.

## COUNT II
### (Declaration That Defendants Lacks Protectable, Valid Trade Dress Rights In the Tribute Flat Sandal Design)

70.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 69, inclusive.

71.     Defendants allege in their Notice Letter that Defendants have trade dress rights in the Tribute Flat Sandal.

72.     Defendants do not have a federal trademark registration for their claimed trade dress.   Defendants have the burden: (1) to identify their unregistered trade dress with the requisite particularity; (2) to show that their unregistered trade dress is distinctive, in that it is recognized by consumers as indicating the source of Defendants' products; and (3) to show that their unregistered trade dress is non-functional. Defendants cannot meet their burden to show a protectable trade dress.

73.     *First*, as a product configuration, Defendants' Alleged Flat Tribute trade dress cannot be inherently distinctive.  Defendants have the burden to show that their trade dress has acquired distinctiveness through secondary meaning—that in the minds of the public, the

684953.1

primary significance of the trade dress is to identify the source of the product rather than the product itself.  Defendants' statements in the draft Complaint that "the TRIBUTE Sandals are among the world's most famous and widely recognized" and that "[c]onsumers, potential consumers and other members of the public and fashion industry recognize that products bearing the TRIBUTE Heels Trade Dress and the TRIBUTE Flats Trade Dress originate exclusively with Plaintiffs" do not meet their burden.  (Draft Compl. ¶ 37.)  Defendants have failed to provide any proof beyond *ipse dixit* to prove inherent distinctiveness.

74.     ***Second***, Defendants cannot show that its Alleged Flat Tribute trade dress is non-functional, nor have Defendants ever even attempted to make this critical showing.  The requirement of non-functionality "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."  *Qualitex Co. v. Jacobson Prods. Co., Inc*., 514 U.S. 159, 164 (1995).  Defendants' alleged trade dress is functional because (1) it is essential to the use or purpose of the product; (2) it affects the cost or quality of the product; and (3) it would put competitors at a significant, non-reputation-related disadvantage.  For example, (1) the substantially flat sole serves the utilitarian purpose of protecting the foot from the ground; and (2) the toe strap serves the utilitarian purpose of keeping the sandal secured on the foot.  Moreover, protecting these basic features, including ***substantially flat soles*** as well as toe bed straps for sandals, would put Madden and third parties in the footwear industry at a significant, non-reputation-related design disadvantage.

75.     In view of the foregoing, Madden seeks a declaratory judgment that Defendants lacks trade dress rights in the design of their flat sandals because their claimed trade dress lacks specificity, is not distinctive and/or is functional.

## COUNT III
### (Declaration that Madden Does Not Infringe
### Defendants' Purported Trade Dress Rights in the Tribute Flat Sandal Design)

76.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 75, inclusive.

77.     To establish trade dress infringement, Defendants have the burden to prove: (1) the existence of valid trade dress; and (2) that consumers are likely to be confused, mistaken or deceived that Madden's products originate from or are sponsored or endorsed by Defendants. 15 U.S.C. § 1125(a).

78.     For the reasons discussed above, Defendants have no protectable or valid trade dress rights.

79.     Nor can there be any likelihood of consumer confusion between Defendants' Tribute Flat Sandal and Madden's Sicily sandals.  Of the four elements of Defendants' Alleged Flat Tribute trade dress, two elements, namely the "substantially flat sole containing a toe strap" and the "strap that bisects the U shaped straps and crosses the toe bed" are present in every flat sandal in the marketplace and a consumer will not be confused as to the source of the sandals based on these elements alone.

80.     The Sicily sandal does not include the other two elements attributable to the Alleged Flat Tribute trade dress.  The third element of the alleged Tribute Flat Sandal trade dress includes "two U shaped pieces each attached to one side of the shoe so that the rounded end is facing towards the middle of the bed."  In other words, the Tribute Flat Sandal has elliptical toe bed straps (traced in blue below) facing each other.  In contrast, the Madden sandal has toe bed straps with parallel straight edges (traced in blue) that extend in the longitudinal direction as seen below that make angled turns (traced in green) toward the side of the toe bed:

| Defendants TRIBUTE Toe Bed | Madden Sicily Toe Bed |
|---|---|
|  | |

81.     A consumer viewing the elliptical toe bed straps, versus the parallel straight edges with angled edges turning towards the sides of the toe bed, and taking into account the gap in the parallel straight edges of the Sicily shoe which are lacking in the design of the Tribute Flat Sandal would understand the shoes as coming from different sources.

82.     The fourth and last element of the alleged Tribute Flat Sandal trade dress includes a "circular strap element".  The Sicily shoe has a square element, not a circular element:

| Defendants TRIBUTE Toe Bed | Madden Sicily Toe Bed |
|---|---|
|  | |

83.     A consumer viewing the different shaped element in the center of the toe bed would understand the shoes with a square element as coming from a different source than those with a circular element.  A consumer would also readily recognize that the sandals originate from a different source by (1) the nature of the shape of each foot bed, with the Sicily sandal foot bed being more rectangular in nature than the more curved foot bed of the Tribute Flat Sandal; and (2) the clear labelling on each foot bed indicating the sandals come from a different source:



84.     Further, Madden and Defendants cater to very different markets.   While Defendants are a high-end, expensive, luxury brand, Steve Madden is a mid-level, much more affordable brand.   Consequently, to the extent the consumer groups overlap, the consumers would be sophisticated enough to recognize the products are coming from different sources based on the price point of the goods.

85.     Accordingly, there can be no likelihood of confusion.

86.     The Court thus should declare that Madden has not infringed Defendants' alleged trade dress rights because Defendants lacks trade dress rights and there is no likelihood of consumer confusion.

**COUNT IV**
**(Tortious Interference With Contract)**

87.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 86, inclusive.

88.     Madden has entered into a contractual relationship with its customers, including Dillard's, DNA Footwear, DSW, Express, Jet, Shoes.com, Walmart, Lori's Shoes, HG Boutique, Shoebacca, Von Maur, and Zappos to sell the Madden Sicily sandal to consumers.

89.     Defendants are and were aware of Madden's contractual relationship with its customers and Madden's expectation of continued performance under that agreement.

90.     Defendants have unjustifiably, and with malice, interfered with Madden's relationship with its customers who sell the Sicily sandal by, among other things, sending notice letters to the customers with a frivolous charge of alleged design infringement of Madden's flat Sicily sandal in view of the '187 Patent directed towards a high-heeled platform shoe.

91.     These letters have caused at least some of Madden's customers to immediately stop the sale of the Madden Sicily sandals and demand that Madden take back the inventory.  As a result of Defendants' wrongful conduct, Madden has been damaged.

92.     The actions of Defendants are willful and malicious and without regard to Madden's rights.

## COUNT V
### (Intentional Interference with Prospective Economic Advantage)

93.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 92, inclusive.

94.     As stated above, Madden has entered business relationships with its customers, including Dillard's, DNA Footwear, DSW, Express, Jet, Shoes.com, Walmart, Lori's Shoes, HG Boutique, Shoebacca, Von Maur, and Zappos to sell the Madden Sicily sandal to consumers.

95.     Defendants sent notice letters to these customers with a frivolous charge of alleged design infringement of Madden's flat Sicily sandal in view of the '187 Patent directed

towards a high-heeled platform shoe.  By including this allegation in the notice letter, Defendants unfairly represented the content and scope of the '187 Patent.

96.     The unfair representations were made by Defendants for the sole purpose of harming Madden's relationship with these customers and to discourage those customers from selling Madden's Sicily sandal.  Further, these customers may be more hesitant in the future to sell Madden's shoes in view of having received these notice letters.

97.     The unfair representations interfered with the business relationship between Madden and its customers and injured Madden's relationship with those customers, including customers pulling the Sicily sandal from their shelves and returning remaining inventory to Madden.

## COUNT VI
### (Deceptive and Unfair Trade Practices)

98.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 97, inclusive.

99.     Madden alleges that Defendants have and are currently engaged in deceptive and unfair trade practices under § 349 of the N.Y. General Business Law.

100.    As described above, Defendants have engaged in unfair trade practices by falsely alleging to Madden's customers design patent infringement of the Madden Sicily sandal in view of the '187 Patent.   These allegations were made in order to intentionally interfere with Madden's sales of the Sicily sandal.

101.    Defendants have engaged in false and misleading representations and omissions of material fact (including that the design patent is directed toward a high-heeled platform shoe and not a flat-soled sandal) to Madden's customers and have engaged in deceptive conduct

designed to intentionally interfere with Madden's market with its customers and sales of at least its Sicily sandal.

102.    Defendants' false and misleading representations and deceptive conduct are material in that they have caused and are likely to cause prospective consumers of Madden's sandals to be forced to purchase Defendants' sandals based on the absence of Madden's sandals being available for sale at the Madden customers that have removed the Madden Sicily sandal from sale.

103.    Defendants have disparaged the goods and services and business reputation of Madden through false and misleading representations of material fact by falsely claiming design patent infringement of the '187 Patent in violation of New York's Deceptive and Unfair Trade Practices Act, Sections § 349 of the N.Y. General Business Law.

104.    This materially deceptive conduct affected the consumer's choice of available sandals in the market, taking a lesser priced sandal out of the market in comparison to Defendants' higher-priced sandal.

105.    Defendants' acts are both willful and malicious.

106.    As a direct and proximate result of such misleading and deceptive conduct, Madden as well as consumers, have sustained and are likely to continue to sustain damages in terms of loss of reputation, customers, and sales in an amount not yet subject to determination.

## COUNT VII
### (Breach of Contract)

107.    Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 106, inclusive.

108.     In 2017, Madden and Defendants reached an agreement whereby in exchange for Defendants dropping their assertions against the Madden Kananda shoe, Madden agreed to discontinue the Kananda shoe.

109.     In accordance with that promise, Madden discontinued the Kananda shoe in 2017.

110.     Defendants' have failed to perform on their portion of the agreement.  Defendants have threatened to sue Madden for infringement of the '187 Patent and their alleged trade dress rights with respect to the discontinued Kananda shoe.

111.     Defendants' failure to perform their part of the agreement constitutes a breach of a contract.

112.     Madden has been damaged by this failure to perform in the nature of sales it could have made of the Kananda shoe had it not discontinued the shoe in response to Defendants' allegations against the Kananda shoe in 2016.

## COUNT VIII
### (Promissory Estoppel)

113.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 112, inclusive.

114.     In exchange for Defendants dropping their assertions against the Madden Kananda shoe, Madden made a clear and unambiguous promise to discontinue the Kananda shoe.

115.     In accordance with that promise, Madden ceased manufacture and sale of the Kananda shoe in 2017.

116.     Defendants have broken their promise.  They have threatened to sue Madden for infringement of the '187 Patent and their alleged trade dress rights with respect to the discontinued Kananda shoes.

117.    Madden has been injured by the sales it could have made of the Kananda shoe had it not discontinued the shoe in view of Defendants' allegations against the Kananda shoe in 2016.

118.    Defendants received the benefit of the bargain of this agreement, namely, Madden ceased its manufacture and sale of the Kananda shoe long ago.  Defendants must be estopped from breaking their promise by, *inter alia,* asserting patent and trade dress infringement claims against the discontinued Kananda shoe.

## COUNT IX
### (Equitable Estoppel)

119.    Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 118, inclusive.

120.    Defendants told Madden they would drop their assertions with respect to the Kananda shoe if Madden would agree to discontinue the shoe.  Defendants made this proposal with the intent that Madden would act upon it and discontinue the Kananda shoe.

121.    In reliance on Defendants' representation, Madden discontinued the Kananda shoe in 2017.

122.    Defendants' conduct amounted to a false representation because unbeknownst to Madden, Defendants knew that they would renew their assertion against the Kananda shoe, even though that shoe is no longer sold.

123.    By threatening to sue Madden for infringement of the '187 Patent and their alleged trade dress rights with respect to the discontinued Kananda shoes, Madden has been prejudiced by this change in its position.

124.    Madden has been injured by the sales it could have made of the Kananda shoe had it not discontinued the shoe in view of Defendants' allegations against the Kananda shoe in 2016.

Further Madden must now defend itself against an allegation that it thought had been put to rest with its agreement to discontinue the Kananda shoe.

125.    Defendants must be estopped from making patent and trade dress infringement claims against the discontinued Kananda shoe in view of their conduct described above.


WHEREFORE, Plaintiff Madden respectfully requests that this Court enter judgment in favor of Plaintiff Madden and against Defendants, and issue an Order:

A.    Declaring that Madden has been injured by Defendants' allegations in their Notice Letter and draft Complaint against the Kananda shoe, despite Defendants' promise to drop their assertion;

B.    Declaring that the Sicily sandal does not infringed the '187 Patent;

C.    Declaring that Defendants lacks trade dress rights in the design of its Tribute Flat Sandal;

D.    Declaring that Madden has not infringed any alleged trade dress rights Defendants claim in the design of its Tribute Flat Sandal;

E.    A permanent injunction enjoining Defendants from asserting to Madden and its customers that Madden's sales of the Sicily sandal constitute infringement of Defendants' patent rights, including the '187 Patent;

F.    A permanent injunction enjoining Defendants from pursuing patent and trade dress infringement claims against Madden's discontinued Kananda sandal;

G.    Defendants be required to pay Madden Defendants' profits and any costs of this action and any damages which Madden sustained as a result of Defendants' breach of its

promise, breach of contract, willful deceptive acts and unfair trade practices, tortious interference with contract and intentional interference with prospective economic advantage; and

       H.     Plaintiff be granted such other and further relief as the Court may deem just and proper.

       ***Plaintiff demands a jury trial.***

Dated:  New York, NY                Respectfully submitted,
          August 20, 2018

                                        AMSTER, ROTHSTEIN & EBENSTEIN LLP
                                        Attorneys for Plaintiff
                                        90 Park Avenue
                                        New York, NY  10016
                                        (212) 336-8000  (main)
                                        (212) 336-8001  (facsimile)

                                By  /s/Douglas A. Miro
                                        Douglas A. Miro
                                        Brian A. Comack
                                        Benjamin Charkow